

NUMBER 13-12-00585-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

PATRICIA THORNTON, INDIVIDUALLY AND AS       Appellant,
NEXT FRIEND OF LOGAN QUINN,

**v.**

HENKELS & MCCOY, INC. AND
RAY MEDRANO,       Appellees.

On appeal from the 148th District Court of
Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza, and Perkes
Memorandum Opinion by Justice Garza**

By a single issue, appellant, Patricia Thornton, individually and as next friend of

Logan Quinn, a minor child, contends the trial court erred in granting summary judgment

in favor of appellees, Henkels & McCoy, Inc. and Ray Medrano (collectively "H&M").

We affirm.

## I. BACKGROUND

Thornton and her nine-year-old daughter, Logan, were driving westbound on U.S. Highway 59 near George West, Texas. An eighteen-wheeler tractor/trailer carrying a high load was also traveling westbound ahead of Thornton. The tractor/trailer snagged a Verizon overhead communication cable hanging above the highway, causing the pole to which the cable was attached to break off. The pole flew across the eastbound lanes and struck the driver's side of Thornton's vehicle. The vehicle left the roadway and struck a drainage culvert. Thornton and her daughter allegedly sustained serious injuries in the accident.

Thornton sued, among others, the owner and driver of the tractor/trailer, Verizon, and H&M, a company that provides services to Verizon's utility cables. Appellant's live petition alleged that H&M was "negligent in owning, operating, repairing and/or maintaining" the subject utility cable. It also alleged that H&M was aware that the cable was too low before the accident, and was therefore "liable under a negligent undertaking theory." H&M filed a traditional motion for summary judgment,[1] asserting that: (1) appellant's claim is a premises defect claim; and (2) H&M had no duty as a matter of law to remedy the alleged dangerous condition of the sagging utility cable because it did not own, occupy, or control the premises and did not create or agree to make safe the alleged dangerous condition. H&M attached the following summary judgment evidence to its motion: (1) excerpts from a service contract between Verizon

_____

[1] We note that H&M filed an "Amended Motion for Summary Judgment" on November 14, 2011. A hearing was held on the motion on March 28, 2012. The trial court signed an order granting the motion on June 5, 2012 and signed an order granting H&M's motion to sever on August 10, 2012. On August 13, 2012, H&M re-filed the same "Amended Motion for Summary Judgment" that it filed on November 14, 2011. The motions appear to be identical and the same exhibits are attached to each motion.

2

and H&M providing that maintenance and service work will be performed by H&M on Verizon's lines only pursuant to specific work orders ("Award Letter[s]" or "Letter[s] of Authorization") issued by Verizon; (2) Verizon's interrogatory answer reflecting that it did not issue a work order requesting that H&M raise the utility cable before the accident; and (3) an affidavit by John Dorman, H&M's area supervisor, stating that, prior to the accident, H&M was not authorized to work on the utility cable at issue, did not perform any work on the utility cable, and did not agree to make safe the alleged low condition of the utility cable.

Appellant filed a response to H&M's motion for summary judgment in which she characterized her claims against H&M as (1) "professional negligence," (2) negligent undertaking, and (3) in the alternative, a claim for premises liability based on the allegation that H&M agreed to make safe a dangerous condition and failed to do so or created the dangerous condition. Appellant attached to her response: (1) an affidavit by E. P. Hamilton III, an "independent third-party engineer"; (2) Medrano's answers to Verizon's interrogatories; (3) Dorman's deposition; (4) excerpts from the contract between H&M and Verizon; and (5) Medrano's deposition.

H&M filed a reply to appellant's response in which it argued that: (1) appellant's "professional negligence" claim fails because H&M owed no duty to her; (2) appellant's negligent undertaking claim fails because H&M's alleged failure to remedy the low-hanging cable is an alleged negligent omission, which cannot support a negligent undertaking claim; and (3) appellant's alternate premises liability claim based on H&M's alleged creation of a dangerous condition fails because the evidence established that H&M did not work on the utility cable prior to the accident.

3

Following a hearing, the trial court granted H&M's motion and severed appellant's claims against H&M from her remaining claims.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

In a summary judgment case, the movant must show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). The movant has the burden of proof. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). A defendant who conclusively negates at least one essential element of the plaintiff's cause of action, or who conclusively establishes all of the elements of an affirmative defense, is entitled to summary judgment. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). The burden to raise a fact issue shifts to the non-movant only after the movant has established that it is entitled to summary judgment as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999); *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989).

We review a traditional motion for summary judgment de novo. *Frost Nat'l Bank*, 315 S.W.3d at 508. To determine if the non-movant raised a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

III. DISCUSSION

## A. "Professional Negligence"

To prevail on a claim of negligence, a plaintiff must provide proof of the following three elements: "(1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Black + Vernooy Architects v. Smith*, 346 S.W.3d 877, 882 (Tex. App.—Austin 2011, pet. denied) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.*, 252 S.W.3d 586, 591 (Tex. App.—Fort Worth 2008, pet. denied)). "The threshold inquiry in a negligence case is duty." *Dukes*, 252 S.W.3d at 591. "Whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence in question." *Id.* "Accordingly, appellate courts review de novo a determination regarding whether a legal duty is owed." *Smith*, 346 S.W.3d at 882–83.

Appellant first asserts that H&M owed a duty to her because it was performing engineering services and was therefore obligated to report the unsafe condition when Medrano observed the low-hanging cable several years before the accident. In his deposition, Medrano stated that, when he was working on a different line two to three years before the accident, he noticed that the utility cable appeared to be low. Appellant's argument fails for several reasons. First, even if H&M was performing engineering services—which it denied[2]—it had no legal duty arising from its profession as engineers to report a dangerous condition. *See Dukes*, 252 S.W.3d at 594 (concluding that a court is not required to consider professional codes of ethics in

---

[2] Dorman provided deposition testimony that H&M does not perform any engineering services for Verizon in Texas.

conducting a duty analysis). Second, even if H&M was performing engineering services, the scope of its duty is determined by its contract with Verizon. *See id.* at 594–95. Here, H&M's contract with Verizon provided that H&M was only authorized to perform work for Verizon pursuant to an executed work order (an "Award Letter" or "Letter of Authorization"), and it is undisputed that Verizon did not issue a work order authorizing H&M to work on the low-hanging cable prior to the accident. Because H&M had no obligation under the contract to remedy the low-hanging cable, it had no duty to do so under a professional negligence theory. *See id.* The trial court did not err in granting summary judgment as to appellant's professional negligence claim.

## B. Negligent Undertaking

Appellant claimed that H&M is liable for negligent undertaking because it and Medrano were aware of the low-hanging cable "weeks" before the accident and reported it to Verizon, but did not otherwise take action. In her response, appellant alleged that "H&M took perfunctory steps to make the line safe but it failed to exercise reasonable case [sic] in this regard." To establish a negligent undertaking claim, a plaintiff must prove that: (1) a defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection; (2) the defendant failed to exercise reasonable care in performing those services; and (3) either the plaintiff relied on the defendant's performance, or the defendant's performance increased the plaintiff's risk of harm. *Willowbrook Foods, Inc. v. Grinnell Corp.*, 147 S.W.3d 492, 499 (Tex. App.—San Antonio 2004, pet. denied) (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000)); *Coastal Corp. v. Torres*, 133 S.W.3d 776, 780 (Tex. App.—Corpus Christi 2004, pet. denied); *see Peterson v. RES Am. Const., Inc.,* No. 13-

6

10-238-CV, 2011 WL 2582560, at *7 (Tex. App.—Corpus Christi June 30, 2011, no pet.) (mem. op.).

H&M argued, in its reply and on appeal, that a negligent undertaking claim requires an "affirmative course of action" by the defendant and cannot be predicated, as here, on an alleged negligent omission or failure to act. We agree. *See Coastal*, 133 S.W.3d at 780–81 (concluding that complaints about a parent company's refusal to budget expenditures for a subsidiary was the "antithesis of an affirmative course of action" that was required to prove the voluntary undertaking of a duty to provide safety to the subsidiary's employees). As noted, Medrano stated in his deposition that he noticed the utility cable appeared to be low two to three years before the accident, not "weeks" before the accident as appellant alleged. Dorman's affidavit established that H&M did not work on the utility cable before the accident and was not authorized to do so. We conclude that appellant cannot show an "affirmative course of action" undertaken by H&M for appellant's benefit. *See id.* The trial court did not err in granting summary judgment on appellant's negligent undertaking claim.

## C. Alternative Premises Liability Claim

Appellant asserted in the alternative that H&M is liable under an exception to the general rule of premises liability.[3] "If the general rule of premises liability is inapplicable, a party may be held liable under a premises liability analysis only if the party has agreed to make safe a known, dangerous condition on the premises and failed to do so or if the party has created the dangerous condition." *Dukes*, 252 S.W.3d at 596. Specifically,

---

[3] Ordinarily, under the general rule of premises liability, a person who does not own the real property must assume control over and responsibility for the premises before there will be liability for a dangerous condition existing on the real property. *Dukes v. Phillip Johnson/Alan Ritchie Architects, P.C.*, 252 S.W.3d 586, 592 (Tex. App.—Fort Worth 2008, pet. denied).

7

appellant asserted, in her response and on appeal, that there are fact issues: (1) "as to whether H&M['s] installation of this line in the first place caused the line to lower below the legal limit"; and (2) "that H&M installed the line." According to appellant, the evidence "reveals that H&M created this dangerous condition when it installed the line or when it did maintenance near the line, before the accident." In support of her assertion that "H&M had performed work on the very line at issue in this case," appellant cites a portion of Dorman's deposition testimony. Dorman's testified that H&M performed some work at that intersection in 2004, but that he was not aware of any work that H&M performed on the utility cable.

We are unpersuaded by appellant's argument. The evidence shows that H&M did not work on the utility cable prior to the accident, and pursuant to its contract with Verizon, was not authorized to perform any work on it prior to the accident. Dorman's affidavit established that H&M: (1) did not "at any time prior to the accident" perform any work on the utility cable, (2) was never authorized by Verizon to work on the utility cable prior to the accident, and (3) did not agree to make safe the alleged low condition of the utility cable. This evidence established H&M's entitlement to judgment as a matter of law. Because appellant has not raised a fact issue as to H&M's liability under the exception to the general rule of premises liability, the trial court did not err in granting summary judgment on appellant's claim under the exception.

### D. Premises Liability

In its motion for summary judgment, H&M asserted that appellant's claim against it is a premises defect claim. Duty is a threshold inquiry in a premises liability case. *Dukes*, 252 S.W.3d at 592. Ordinarily, a person who does not own the real property

8

must assume control over and responsibility for the premises before there will be liability for a dangerous condition existing on the real property. *Id.*

Here, H&M did not own the premises; Verizon owned the utility cable that crossed over a public highway. H&M also had no right to control the premises through its contract with Verizon. The contract provides that any work performed by H&M for Verizon can only be performed pursuant to a "Letter of Authorization" or "Award Letter." Verizon's interrogatory response established that it did not issue a work order to H&M to work on the utility cable prior to the accident. Similarly, H&M did not exercise any actual control over the premises. Dorman's affidavit established that H&M did not perform any work on the utility cable and was not authorized to do so under its contract with Verizon.

We conclude that H&M established its entitlement to judgment on appellant's premises liability claim. Appellant did not produce any evidence raising a fact issue as to the premises liability claim. In her response, appellant alleged that H&M was liable under a premises liability theory only under the exception that it agreed to make safe the alleged dangerous condition and failed to do so and/or that it created the dangerous condition. *See id.* at 596. We have already rejected appellant's argument regarding the exception to the general rule of premises liability. We conclude that the trial court did not err in granting summary judgment on appellant's premises liability claim.

Appellant failed to produce evidence raising a fact issue as to any of her claims. Summary judgment in favor of H&M was proper. *See* TEX. R. CIV. P. 166a(c). We overrule appellant's sole issue.

9

## IV. Conclusion

The trial court's summary judgment is affirmed.

_____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
17th day of October, 2013.